**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SANDRA PAYNE,

Plaintiff,

v. No. 2:26-cv-265-KRS-DLM

OLEH PASHKO; and WEST WIND LOGISTICS INC.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

In this diversity action, Plaintiff Sandra Payne asserts personal injury claims against Defendants Oleh Pashko (Pashko) and West Wind Logistics Inc. (West Wind) arising out of a collision between Plaintiff's car and a commercial tractor-trailer. The case is presently before the Court on Defendants' Motion To Dismiss ("Motion") (Doc. 8), which seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of the negligent hiring, training, supervision, and entrustment claims against West Wind. As discussed below, the Motion will be granted in part and denied in part.

**I. BACKGROUND**

The automobile accident at issue occurred in Hidalgo County, New Mexico on or about January 15, 2024. Plaintiff alleges that she was driving westbound on Interstate 10 when suddenly and without warning a semi-tractor truck and trailer changed lanes, cutting into the left lane where Plaintiff was driving. (Doc. 1-1 ¶¶ 6-7). Plaintiff tried to avoid the truck as it was pulling directly in front of her vehicle by stepping on the brakes and veering into the center median. But she was unable to avoid the collision altogether. The truck hit the front of her car, causing Plaintiff to strike

her face on the steering wheel as her vehicle spun around, ultimately coming to rest in the center median facing southeast on the highway.

On January 7, 2026, Plaintiff filed a Complaint for Personal Injuries and Damages in the Sixth Judicial District, County of Hidalgo, State of New Mexico against Pashko, the driver of the semi-tactor trailer, and West Wind, the company that employed Pashko. Plaintiff's claims against Pashko include negligence, negligence per se, and gross negligence. In support of these claims, Plaintiff alleges that Pashko was inattentive to traffic and traveling at an unsafe speed when he changed lanes without caution, causing severe physical injuries to Plaintiff and substantial damage to her vehicle. Plaintiff's claims against West Wind include respondeat superior liability for Pashko's negligence, and independent negligence claims based on West Wind's hiring, training, and supervision of Pashko and entrustment of the semi-tractor truck to Pashko. In support of her negligent hiring, training, and supervision claims, Plaintiff alleges West Wind had a duty to the public, including Plaintiff, to hire competent agents and employees, and that West Wind breached that duty by "fail[ing] to hire a competent driver to operate the **road grader** on the date in question," and by "fail[ing] to properly train and supervise its employee and agent, that [sic] proximately caused Plaintiff's injuries and damages." (*Id.* ¶¶ 24-25). In support of her negligent entrustment claim, Plaintiff alleges that West Wind was "negligent per se by entrusting the control and operation of the **road grader**, which was under their [sic] ownership and control, to [Pashko]." (*Id.* ¶ 26). Plaintiff also alleges that West Wind was negligent by "[a]llowing [Pashko] [to] operate their [sic] **road grader** on their [sic] **construction job site** premises in **Eddy County**, New Mexico and in particular, at the location referred to above, when they [sic] knew, or should have known, that [Pashko] was unfit, incompetent, reckless, and unskilled to operate the **road grader**." (*Id.*).

On February 4, 2026, Defendants removed the complaint to this Court. On February 11, 2026, Defendants filed the present Motion, as well as an answer to the complaint. Defendants argue in the Motion that the Court should dismiss the independent negligence claims against West Wind (negligent hiring, training, supervision, and entrustment) because the allegations supporting those claims are based on another case involving a road grader on a construction job site in Eddy County, and "Plaintiff cannot plausibly state a claim for relief based on facts from another case." (Doc. 8 at 4; *id.* at 6-7). Defendants also argue that, setting aside the fact that Plaintiff's independent negligence claims against West Wind are based on facts from another case, those claims should be dismissed because "Plaintiff's allegations are threadbare recitals of the elements, which is insufficient to state a claim." (*Id.* at 4).

In response to the Motion, Plaintiff argues that her allegations regarding West Wind's conduct create plausible claims for relief under New Mexico law. (Doc. 16 at 3-5). She also argues that "the reference to the road grader in … [the] complaint is merely Plaintiff's alternate characterization of the semi-tractor truck that was being operated by [Pashko] at the time of the accident"; that the complaint clearly identifies the vehicle operated by Pashko as "the Kenworth Semi-Tractor Truck and Trailer that changed lanes and caused the collision with Plaintiff"; and that "the complaint did not intend to identify the road grader as an alternate vehicle separate and apart from the semi-tractor truck." (*Id.* at 5-6). Plaintiff also asserts in a footnote that the reference to Eddy County in the complaint was "merely a typographical error." (*Id.* at 6 n.1). Plaintiff goes on to argue that, to the extent the reference in the complaint to a road grader creates ambiguity in the allegations supporting Plaintiff's claims, that ambiguity is removed in the allegations of a proposed first amended complaint, which Plaintiff submits with her response in opposition to the Motion. *See* (Doc. 16 at 10-20 (proposed first amended complaint)). Further, if the complaint does

not adequately allege the independent negligence claims against West Wind, Plaintiff argues that the remedy is not to dismiss those claims with prejudice but to allow Plaintiff the opportunity to amend. According to Plaintiff, the proposed first amended complaint submitted with her response brief "clarifies the negligent hiring, supervision, and training and the negligent entrustment claims against West Wind," and, Defendants' Motion therefore should be denied as moot. (*Id.* at 1, 7).

Defendants argue in their reply brief that Plaintiff should be denied leave to amend for three reasons. First, Defendants argue that the alleged facts included in the proposed first amended complaint were known to Plaintiff when the original complaint was filed. Second, Defendants argue that Plaintiff did not take the opportunity to amend before the Motion was filed, even though Defendants conducted a pre-filing meet-and-confer with Plaintiff on the issues raised by the Motion. And third, Defendants argue that the proposed first amended complaint does not cure all the deficiencies raised in the Motion, and therefore the proposed amendment is futile. (Doc. 17 at 1-2).

## II. DISCUSSION

### A. Plaintiff's Request To Amend The Complaint

#### 1. Preliminary Issue

The Court is troubled by the manner in which the amendment issue has been presented. "A request for a court order must be made by motion." FED. R. CIV. P. 7(b)(1). Rather than separately file a motion to amend the complaint, Plaintiff submitted a proposed first amended complaint with her brief in response to Defendants' Motion. Plaintiff titles her response brief as a "Response To Defendants' Rule 12(b)(6) Motion To Dismiss *And Alternative Motion For Leave To File First Amended Complaint*." (Doc. 16 (emphasis added)). But approaching the amendment issue in this manner violates this Court's longstanding order that "all practitioners before the Court [must]

submit a separate pleading for each matter upon which adjudication or a ruling of the Court is sought." *In the Matter of Separate Submission and Docketing of Motions and Responsive Pleadings,* Administrative Order No. Misc. 92-88 at 1 (May 4, 1992). And because the filing event in CM/ECF that Plaintiff selected for the combined document was a "response brief" rather than a "motion," there is in fact no motion for leave to amend that is pending on the docket, notwithstanding that the title to Plaintiff's filing suggests otherwise.

Ordinarily, the failure to file a motion seeking leave to amend separate from a response brief in opposition to a motion to dismiss will result in leave to amend being denied without prejudice to filing a proper motion. *See, e.g., Lehr v. Terry*, No. 1:25-CV-02464-JRR, 2026 WL 1884237, at *4–5 (D. Md. July 1, 2026) ("[O]pposition to a motion to dismiss is not the proper vehicle for amending a complaint. [citations omitted]. … Accordingly, Plaintiff's request for leave to amend will be denied without prejudice."); *see also Monarchy Real Est. Acquisitions & Holdings, LLC v. Vance,* No. 1:23-cv-493-WR-JFR, 2023 WL 5835827, at *12 (D.N.M. Sept. 8, 2023) ("[a] court need not grant leave to amend when a party fails to file a formal motion" (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs*., 181 F.3d 1180, 1186 (10th Cir. 1999)). Nevertheless, cases in which leave to amend has been denied on this basis typically involve bare requests for leave to amend without a proffer of the proposed amendments. *See, e.g., Lehr,* 2026 WL 1884237, at *4–5 ("The court cannot grant Plaintiff leave to file a future, speculative amended complaint without assessing such additional proposed claims or amendments to existing claims."). As the Tenth Circuit has said, "[s]uch 'shot[s] in the dark' do not request 'an order contemplated under the rules,' do not state any particular grounds for the request, and lack basis." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) (citation omitted).

Here, Plaintiff has attached a proposed first amended complaint to her response brief, and Defendants have addressed the legal sufficiency of the proposed first amended complaint in their reply brief. Therefore, denying leave to file the proposed first amended complaint without prejudice to filing a separate motion seeking leave to amend would only delay these proceedings further. Plaintiff would simply file a separate motion making the same arguments she makes in her brief in response to Defendants' Motion, and Defendants would respond to Plaintiff's motion by making the arguments they have already made in their reply brief. The Court also notes that Defendants have not objected to the request for leave to amend on the basis of Plaintiff's failure to file a separate motion. Therefore, the Court will consider Plaintiff's motion requesting leave to amend despite her failure to seek that relief through an independent motion filed separately on the docket.[1]

**2. Rule 15(a)**

Generally, a court should freely give leave to amend a complaint when justice so requires. FED. R. CIV. P. 15(a)(2). Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Id.* at 1204 (internal quotations omitted). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as

[1] The Court notes, however, that by combining her response in opposition to Defendants' motion to dismiss with her motion for leave to amend, Plaintiff avoided the requirement of D.N.M. LR-CIV. 7.1(a) that she determine whether her motion for leave to amend was opposed before requesting that relief. As will be discussed in a moment, Defendants have a point when they argue that Plaintiff should have raised the amendment issue when Defendants conferred with Plaintiff concerning Defendants' Motion. The ultimate issue of whether Plaintiff's amended allegations are sufficient to withstand a Rule 12(b)(6) motion to dismiss could have been presented in a more direct and efficient manner had Plaintiff raised the issue in either the pre-filing conference initiated by Defendants concerning their arguments for dismissal of the current complaint, or else in a pre-filing conference initiated by Plaintiff as required by Local Rule 7.1(a) concerning her proposed amendments to the current complaint.

undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Defendants argue that leave to amend should be denied because the facts included in the proposed first amended complaint were known to Plaintiff when she filed the original complaint. But Defendants do not specifically argue that the facts being already known to Plaintiff means that Plaintiff either caused undue delay or acted in bad faith. Nor can the Court infer on its own either of those things simply because Plaintiff was aware of the newly alleged matters when she filed the original complaint. Rather than indicating bad faith, amending a complaint to add new facts that were previously known to a party is justified if there is a need to clarify the allegations at issue, which seems to be the reason for the proposed amendment here. *See, e.g., Iron Workers Local No. 25 Pension Fund v. Klassic Servs., Inc*., 913 F. Supp. 541, 543 (E.D. Mich. 1996) (stating that Rule 15(a) is intended to "enable a party to assert matters that *were overlooked* or were unknown at the time the original complaint or answer was interposed" (emphasis added)). Previous knowledge about newly alleged facts is certainly relevant if there is an undue delay argument to be made. *See, e.g., Dixon v. Stone Truck Line, Inc.,* No. 2:19-cv-945-JCH-GJF, 2020 WL 7079047, at *17 (D.N.M. Dec. 3, 2020) (finding undue delay and lack of diligence in moving to amend outside the scheduling order deadlines where "[t]he factual allegations were not based on new information learned in discovery"). But here, no scheduling order has been entered yet, so Plaintiff's failure to include the newly alleged facts in the original complaint did not amount to undue delay. And because there is no scheduling order in place yet, Plaintiff is not required to show good cause for amending the complaint. *See, e.g., Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1240-41 (10th Cir. 2014) (stating that, *after a scheduling order deadline has passed*, a party seeking leave to amend must not only satisfy Rule 15(a)'s standard

but also demonstrate good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4)).

Defendants' second argument against permitting leave to amend fairs no better. Defendants point out that Plaintiff did not seek leave to amend when Defendants conducted a pre-filing meet-and-confer on the issues raised by the Motion, and instead waited until her response brief in opposition to the Motion to raise the amendment issue. The Court agrees that the better practice would have been for Plaintiff to raise the issue of amending her complaint as part of the conferral process over Defendants' motion to dismiss. The parties then could have immediately joined issue over the sufficiency of the amended allegations rather than wasting time and effort addressing the original allegations. But Defendants have not pointed to any rule that required Plaintiff to take that route. And Plaintiff's failure to do so at most resulted in Defendants having to brief the adequacy of the proposed amended complaint in its reply brief, which might have marginally increased Defendants' costs on the Motion by rendering certain aspects of Defendants' opening brief moot. Defendants have not shown, or even argued, bad faith, however. The manner in which the amendment issue ended up before the Court, therefore, does not provide an independent reason for denying Plaintiff leave to amend.

Finally, the Court notes that the proposed amendment to the current pleading is justified insofar as it removes the erroneous references in the original complaint to a "road grader" and "Eddy County."[2] The Court seriously doubts that Plaintiff's counsel intentionally chose to refer to the semi-tractor trailer at issue in this case alternatively as a "road grader," as Plaintiff's response brief suggests. The more likely explanation for that terminology (as Plaintiff is forced to admit at

---

[2] The proposed first amended complaint still includes, however, a reference to Pashko having operated the semi-tractor truck on West Wind's "construction job site" (Doc. 16 at 18 ¶ 25b), which is inconsistent with (or at the very least confusing given) Plaintiff's allegation that the traffic accident at issue here occurred on Interstate 10.

least with regard to the complaint's reference to Eddy County) is that it is a "typographical"—by which Plaintiff really means factual—error. Moreover, the factual errors that have been identified by Defendants (and that are now mostly, *see supra* note 2, corrected by the proposed first amended complaint) likely crept into the complaint as a result of something that attorneys, rightly or wrongly, commonly do, which is repurpose a pleading from one case when drafting a pleading for another. *See, e.g., Pipefitters Loc. No. 636 Defined Benefit Plan v. Oakley, Inc.,* 180 Cal. App. 4th 1542, 1547, 104 Cal. Rptr. 3d 78, 80–81 (2010) (where the defendant "characterized plaintiff's two complaints as 'cookie-cutter' pleadings 'containing allegations literally copied from previous complaints filed in similar lawsuits").

There is nothing inherently wrong with copying allegations from a different case so long as those allegations are modified to fit the actual facts of the present case as revealed to the pleader after having conducted a good faith pre-filing investigation. *See Pettit v. Allina Health Sys.,* No. 23-CV-2789 (JWB/JFD), 2025 WL 339275, at *6 (D. Minn. Jan. 30, 2025) ("Copying a pleading is not per se a violation of Rule 11. In cases with the same or similar facts this is efficient. Here, however, Mr. Hechter copied portions of the previous complaint that made factual allegations that simply did not reflect Ms. Pettit's experiences, knowledge, and claims."), *report and recommendation adopted,* No. CV 23-2789 (JWB/JFD), 2025 WL 904403 (D. Minn. Mar. 25, 2025); *cf. Brown v. Ameriprise Fin. Servs., Inc.,* 276 F.R.D. 599, 610 (D. Minn. 2011) ("It is clear to the Court that the vast majority of the factual allegations supporting Plaintiff's class claims were taken directly from the Coca–Cola Complaint, and describe the employment practices of that company, not Ameriprise. This conduct violates Rule 11(b)(3)'s requirement that reasonable inquiry be made that the factual contentions contained within a pleading have factual support.").

Here, while the errors in question misidentify certain facts in the case, Defendants do not point to those incorrect facts as an indication of a Rule 11 violation. Instead, they argue that those errors indicate a lack of sufficient underlying facts to support the claims at issue. The Court does not find that the errors themselves establish that the complaint fails to allege plausible claims for negligent hiring, training, supervision, and/or entrustment by West Wind. Rather, the Court must determine whether Plaintiff has alleged sufficient facts (ignoring the misnomer regarding a road grader and mistakenly identified location of the accident) to give rise to plausible claims for relief.[3] And since the only possibly valid reason Defendant has given for denying leave to amend here is futility, the Court will direct its attention to the sufficiency question as it relates to the proposed first amended complaint, rather than the original complaint containing the erroneous language concerning a road grader being operated in the wrong county. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (a proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that it would not survive a motion to dismiss or a motion for summary judgment).

[3] *Cf. Creager v. Bank of Am. NA,* No. CV-21-02101-PHX-SPL, 2022 WL 22988631, at *4 (D. Ariz. Nov. 4, 2022) (noting that any plausible factual basis for general factual allegations in the complaint was "undermined by the fact that the allegations were copied almost verbatim from a complaint filed in a separate case," but concluding that the real issue with the complaint was the plaintiff's failure "to allege any facts specific to the[ir] experiences" so as "to provide Defendant with fair notice of what Plaintiffs' claims are or the grounds upon which those claims rest"); *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 602 (S.D.N.Y. 2013) (noting that not only did the plaintiffs "copy[ ] general allegations" from pleadings in unrelated cases, they also "copied specific allegations and deceptively edited them," and inferring from those facts that the plaintiffs could not "point to any conduct that [defendant] engaged in that support[ed] their Civil Rights Act claims"); *U.S. ex rel. Brooks v. Lockheed Martin Corp.,* 423 F. Supp. 2d 522, 527–28 (D. Md. 2006) (dismissing complaint where the plaintiff had "cribbed long passages from [another] complaint," which concerned "general allegations of wrongdoing"; "[h]e could not copy the allegations regarding specific false claims, because they concerned [a different] plant only," and his "failure, despite the opportunity provided to him, to specify a single false claim centering on the [ ]plant [at issue] leads to the conclusion that he knows of none").

**B. Defendants' Rule 12(b)(6)/Futility Arguments**

To survive a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Plausibility requires a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (quoting FED. R. CIV. P. 8(a)(2)). The plausibility standard constitutes "a middle ground between 'heightened fact pleading,' which is expressly rejected" by *Twombly*, 550 U.S. at 570; *see also id.* at 555 (a complaint "does not need detailed factual allegations"), "and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the [Supreme] Court stated 'will not do.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully). When reviewing a plaintiff's complaint for plausibility, a court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court must "disregard conclusory statements and look only to whether the remaining, factual allegations

plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### 1. Claim for Negligent Hiring

"In New Mexico, for a plaintiff to succeed on a claim for negligent hiring, he must show 'that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known that the employee was unfit.'" *Dixon*, 2020 WL 7079047, at *12 (quoting *Valdez v. Warner*, 1987-NMCA-076, ¶ 11, 106 N.M. 305, 742 P.2d 517 (internal citation omitted)). The proposed first amended complaint alleges that West Wind "failed to hire a competent driver to operate the semi-tractor truck on the date in question." (Doc. 16 at 16, ¶ 21). But the relevant date for Plaintiff's negligent hiring claim is the date of hire, not the "date in question." And the Court cannot plausibly infer from allegations concerning Pashko's incompetence on the date in question, which is all that the proposed first amended complaint contains, that Pashko was an incompetent driver when he was hired. *See, e.g., Crawford v. Move Freight Trucking, LLC*, No. 7:23-CV-433, 2024 WL 762377, at *3 (W.D. Va. Feb. 20, 2024) ("The SAC alleges only that Flores operated a tractor-trailer in Virginia and unlawfully parked it on the shoulder of Interstate 81. There are no facts alleged that MFT knew or had reason to know that hiring Flores as truck driver posed an unreasonable risk of harm to others."); *McDonald v. Betsinger*, No. 7:15-CV-00477, 2016 WL 958737, at *4 (W.D. Va. Mar. 8, 2016) ("The collision, standing alone, is insufficient to support the claim of negligent hiring.").

Additionally, the allegations that Pashko was not "competent" (Doc. 16 at 16, ¶ 21), and that he "was reckless in his driving abilities" (*id.* at 17, ¶ 23), are conclusory without any supporting factual details, which the proposed first amended complaint does not contain. *See*

*Clinton v. Sec. Benefit Life Ins. Co*., 63 F.4th 1264, 1275 (10th Cir. 2023) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021))); *see, e.g., Dixon,* 2020 WL 7079047, at *12 ("Although Plaintiff asserts in a conclusory fashion that Ryan Transportation negligently failed to safely hire its drivers, Plaintiff did not set forth a factual basis for how Defendant Tawil was unfit when he was hired …. For example, there are no allegations indicating that Mr. Tawil or Stone Truck had a history of unsafe driving or safety violations." (citing *McKeown v. Rahim*, 446 F. Supp. 3d 69, 86 (W.D. Va. Mar. 16, 2020) (holding that plaintiff failed to state claim for negligent hiring where complaint contained little to no facts indicating defendant should have known driver and his employer were incompetent or would be negligent; complaint did not specify what red flags would have been found or how those red flags would indicate that driver and his employer were unfit))). And there are no allegations of any kind concerning how West Wind may have failed to conduct a reasonable investigation into Plaintiff's driving abilities before hiring him. *See McCormack v. Caddell*, No. CV 25-677 GBW/GJF, 2025 WL 3268704, at *2 (D.N.M. Nov. 24, 2025) (stating that one element of a claim under New Mexico law for negligent hiring is that "the employer failed to exercise reasonable care in hiring … the employee"); *cf. Van Winkle v. Fanton Logistics, Inc*., No. 1:23-CV-00969-DHU-KRS, 2024 WL 4533602, at *2 (D.N.M. Oct. 21, 2024) ("Plaintiff's Complaint lists seven ways that Defendant was negligent in hiring the driver alleged to have caused the subject incident, including that Defendant failed to sufficiently investigate the driver's training, prior employment, criminal record, and past; and that Defendant failed to perform the required screening, testing, and physical

of the driver."). For these reasons, the Court finds that Plaintiff has failed to state a plausible claim against West Wind for negligent hiring.[4]

**2. Claims for Negligent Training and Supervision**

An essential element of a claim under New Mexico law for negligent training and supervision, like a claim for negligent hiring, is that "the employer failed to exercise reasonable care" in training or in supervising the employee. *McCormack,* 2025 WL 3268704, at *2. Plaintiff's allegations regarding the ways in which West Wind failed to exercise reasonable care in its supervision of Pashko are devoid of any factual detail. *See* (Doc. 16 at 16, ¶ 22 (alleging that West Bend breached [its] duty [to supervise its employees] … by failing to … supervise [Defendant Pashko]")). Therefore, the Court agrees with Defendants that the negligent supervision claim should be dismissed. *See Ramon v. Mantilla,* No. CV 24-86 GJF/DLM, 2025 WL 1248902, at *8 (D.N.M. Apr. 29, 2025) (dismissing negligent supervision claim where the complaint did "not identify any specific deficiencies in [the defendant's] supervision of its drivers or of [the defendant

[4] *See, e.g., Cardenas v. Moody,* No. 23-CV-01048-RM-JPO, 2024 WL 1257423, at *2 (D. Colo. Mar. 25, 2024) ("The Complaint lacks any factual allegations that JBC knew or should have known when it hired Defendant Moody that his use of its truck would pose an unreasonable risk of harm to anyone. They allege no facts concerning Defendant Moody's driving history or characteristics to support a reasonable inference that he was an incompetent driver when JBC hired him. Nor do Plaintiffs allege that JBC failed to conduct an appropriate inquiry into Defendant Moody's background or follow up on any apparent issues in connection with his hiring or that a more searching inquiry would have revealed he had dangerous propensities."); *Hernandez v. Ventura Sys LLC*, No. 3:23-CV-2244-D, 2024 WL 583500, at *4 (N.D. Tex. Feb. 13, 2024) ("Plaintiffs have failed to plead a plausible negligent hiring claim because they have not sufficiently alleged facts regarding how Ventura breached its duty to hire competent employees. For example, plaintiffs do not allege facts indicating that an investigation into Herrero's background would have caused a reasonable employer not to hire him as a tractor-trailer driver."); *Hann v. IMC Waste Disposal*, No. 7:22-CV-00102-O, 2023 WL 4208057, at *5 (N.D. Tex. June 27, 2023) ("Plaintiffs fail to allege any facts about Defendant Coleman that could have been found in a background check that would have caused a reasonable employer to refrain from hiring Coleman or shown he was a risk of harm to the public. Plaintiffs have made no allegations regarding whether Coleman was properly licensed. They have pleaded no allegations regarding Coleman's driving history that would cause a reasonable employer to reject Coleman's Job application. Thus, the Amended Complaint does not state a plausible claim for relief on Plaintiffs' negligent hiring claim."); *Baker v. Swift Transp. Co. of Arizona, LLC*, Case No. 2:17-cv-909, 2018 WL 2088006, at *4 (S.D. Ohio May 4, 2018) ("The mere incantation of the elements of a negligent hiring claim, i.e., the abstract statement that the [employer] knew or should have known about the employee's criminal or tortious propensities, without more, is not enough" to enable a plaintiff to survive a motion to dismiss for failure to state a claim.").

driver]" (citing *Linkewitz v. Robert Heath Trucking, Inc.,* No. CV 13-0420 WPL/RHS, 2013 WL 12138884, at *6 (D.N.M. Aug. 13, 2013) (reasoning that conclusory statements that the trucking company failed to supervise its drivers failed to state a claim for negligent supervision, where the plaintiff did not allege "what the[ ] purported deficiencies in ... supervision actually were" and did not, for example, allege that the trucking company failed to monitor driving logs))).

However, the proposed first amended complaint provides the following additional allegations regarding West Wind's alleged failure to exercise reasonable care in training Pashko:

> Specifically, WEST WIND LOGISTICS, INC. failed to adequately train OLEH PASHKO in numerous respects, including: safe operating practices for a semi-tractor truck; proper procedures to follow when switching lanes on a roadway, proper procedures to follow to allow for the safe switching of lanes on a roadway to prevent accidents with other drivers; taking adequate breaks from driving to ensure that a driver is not fatigued; failing to provide instruction on all of the relevant FMCSA regulations that govern OLEH PASHKO's operation of the semi-tractor truck while he was operating it on the roadways.

(Doc. 16 at 16, ¶ 22). The Court finds these allegations of the proposed first amended complaint are sufficient to allege a claim against West Wind for negligent training. *See, e.g., Van Winkle,* 2024 WL 4533602, at *2 (denying motion to dismiss negligent training claim where the complaint alleged "six ways Defendant was negligent in training its driver, including that Defendant failed to explain and demonstrate its safety policies and procedures to the driver; and failed to provide the necessary training to the driver regarding driving the vehicle, vehicle safety, safety classes, how to properly and safely drive the vehicle, the proper method to maintain a vehicle, the proper way and the necessity of keeping the vehicle clean and in proper working order, and in all matters regarding the proper and safe operation of a vehicle and the maintenance of a vehicle in various situations").

The Court acknowledges that other courts have dismissed negligent training claims based on conclusory allegations that the employer knew or should have known the employee was unfit as well as conclusory allegations of causation. *See, e.g., McCormack,* 2025 WL 3268704, at *2-3. The Court declines to dismiss on either basis, however. On the issue of what West Wind knew, Rule 9(b) provides that "knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b); *see United States ex rel. Polukoff v. St. Mark's Hosp.,* 895 F.3d 730, 745 (10th Cir. 2018) (reversing Rule 12(b)(6) dismissal of complaint alleging that defendant submitted a false claim "knowingly," quoting Rule 9(b)'s statement that 'Malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*'" (emphasis added by court)). Additionally, the Tenth Circuit "excuse[s] deficiencies that result from the plaintiff's inability to obtain information within the defendant's exclusive control." *Id.* (citing *George v. Urb. Settlement Servs*., 833 F.3d 1242, 1255 (10th Cir. 2016)); *see also Colletti v. AGP Transp., LLC*, No. CV 25-1652, 2026 WL 753522, at *3 (E.D. La. Mar. 17, 2026) ("Defendant points out that Plaintiff has not pleaded facts concerning AGP's knowledge of Elier's background or its driver training protocol. This type of discoverable information is exclusively in the control and possession of AGP. The Fifth Circuit has held that in such a situation, it is not necessarily a plaintiff's responsibility to provide this non-accessible information in his complaint." (footnotes omitted) (citing *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc*., 892 F.3d 719, 730 (5th Cir. 2018)).

On the issue of causation, the Court acknowledges that the complaint's allegations "must be based on something more substantial than mere speculation and conjecture." *Hartman v. United States*, 923 F. Supp. 2d 1287, 1290 (W.D. Okla. 2013). But in this case, the Court can apply common sense to plausibly infer that the alleged inadequate training might have caused the

accident. *See, e.g., Colletti,* 2026 WL 753522, at *3 ("Common sense indicates that a poorly trained, supervised, or insufficiently skilled driver operating a faulty 18-wheeler could cause an accident on the highway. A jury could plausibly find that the vehicular accident and Plaintiff's resulting injuries were foreseeable effects of AGP's failure to train Elier on how to operate an 18-wheeler in rainy conditions. … In viewing Plaintiff's allegations in a light most favorable to him, the Court may draw the reasonable inference that AGP's conduct caused Plaintiff's harm[.]"); *see also Hoobler v. Harbor Freight Tools USA, Inc.,* No. 23-2055-JWB, 2023 WL 5509332, at *3 (D. Kan. Aug. 25, 2023) (finding "unpersuasive" the defendant's argument that the plaintiff's allegations of causation were too conclusory to support a claim, noting that determining whether a complaint contains well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense (internal quotation marks and citations omitted)).

**3. Claim for Negligent Entrustment**

The elements of a claim for negligent entrustment under New Mexico law were set out in the *Ramon* case:

> [U]nder New Mexico law, a party alleging negligent entrustment of a motor vehicle must establish five elements: (1) the defendant owned or controlled the vehicle; (2) the defendant permitted the driver to operate the vehicle; (3) the defendant knew or should have known that the driver was likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others; (4) the driver was negligent in the operation of the vehicle; and (5) the driver's negligence was the cause of injury to the plaintiff. New Mexico courts have equated the third negligent entrustment element to a now-familiar inquiry: whether the defendant knew or should have known the person to whom they were entrusting the vehicle was an incompetent or unfit driver. Among other factors, the New Mexico Court of Appeals has considered the driver's "faculties to drive at the moment of entrustment[ ] and behavior characteristics potentially impacting the entrustee's future capacity to operate a motor vehicle [that] were known to or available to the entrustor."

2025 WL 1248902, at *6 (citations omitted).

Many courts have held that "[a] conclusory allegation that the motor carrier knew or should have known of its driver's incompetence is insufficient to state a claim of negligent entrustment." *Vaughn v. Roadtex Transp. Corp*., No. 3:25-CV-196, 2026 WL 450747, at *3 (S.D. Ohio Feb. 20, 2026). And other courts have held that evidence of the employee's incompetent act giving rise to the underlying negligence claim is not alone sufficient to support a finding that an employer had actual or constructive knowledge of the incompetence prior to the incident. *See, e.g., Jones v. Praxair, Inc.,* No. 3:15-CV-277, 2016 WL 3582128, at *2 (S.D. Ohio June 28, 2016) (dismissing negligent entrustment claim). But here, the first amended complaint goes slightly beyond a conclusory allegation that West Wind knew of should have known of Pashko's incompetence or reliance solely on the accident itself, in that it alleges that West Wind "has knowledge of prior incidents or accidents involving OLEH PASHKO and his driving history that should have led WEST WIND LOGISTICS, INC. to conclude that OLEH PASHKO was unfit to drive the semi-tractor truck[.]" (Doc. 16 at 18, ¶ 25(b)).

The Court realizes that these additional factual allegations are minimal and that some courts would find that they are themselves conclusory. S*ee, e.g., McCormack*, 2025 WL 3268704, at * 2. The Court is also aware that it may be drawing a fine distinction in finding the allegations concerning negligent training and entrustment sufficient but not the allegations of negligent hiring and supervision. Under the view expressed in perhaps the majority of relevant cases, none of Plaintiff's independent negligence claims against West Wind would survive Rule 12(b)(6) review. But the Court is sympathetic to the following viewpoint expressed by more than one district court:

> [I]nformation such as a driver's "history of incompetent or habitually reckless driving" or his "fatigued driving at the time of the accident" is ordinarily in the control and possession of a trucking company[.] … [I]f plaintiffs are required to plead facts concerning

> information they do not have access to, "[t]here are certain types of cases that will be almost impossible to bring, as all of the information necessary to state a plausible claim is owned or known by the defendants and not accessible to the plaintiffs until the discovery phase. …Requiring plaintiffs to plead facts to which they do not have access would, in most instances, preclude claims of negligent hiring, supervision, and training against trucking companies. Rather than granting AGP's 12(b)(6) motion … the Court will allow Plaintiff the opportunity to fully develop the evidence in support of his claim. If discovery fails to produce information that will support Plaintiff's claims against AGP at trial, AGP may seek relief through a motion for summary judgment.

*Colletti,* 2026 WL 753522, at *3-4 (footnotes omitted) (quoting *Quezada v. MDS Trucking V Inc.*, No. EP-23-CV-434-KC, 2024 WL 3748381, at *7-8 (W.D. Tex. Aug. 9, 2024)). The Court agrees with the general principle cited in the relevant case law that "discovery follows the filing of a well-pleaded complaint," and is "not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." *Carter v. DeKalb Cnty., Georgia*, 521 F. App'x 725, 728 (11th Cir. 2013). But it is also the case that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Robbins*, 519 F.3d at 1248. Indeed, the Tenth Circuit specifically used "[a] simple negligence action based on an automobile accident" as an example of the type of case that "may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id.* A negligence claim against the employer of the driver of one of the two vehicles involved in the accident logically should not require much more to be plausible. The cost of additional discovery on the defendant employer based on the independent negligence claim is likely to be minimal, in contrast to the concern expressed by the Supreme Court in *Twombly*, which is an antitrust case, of allowing the discovery based on the "bare allegation of parallel conduct that could be explained as identical but independent action." *Id.* (quoting *Twombly*, 550 U.S. at 558 ("[I]t is only by taking care to require

allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support a § 1 claim." (brackets in original) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347) (further internal citations omitted)))).

In sum, the Court finds that the allegations in the proposed first amended complaint concerning negligent training and entrustment adequately put West Wind on notice of those claims, "and, therefore, comply with Rule 8(a)(2). Further, [Plaintiff] alleges that [West Wind] knew or should have known that [Pashko] w[as] potentially dangerous. Whether [Plaintiff] can establish that fact, and the other facts necessary to establish negligent [supervision or entrustment], may be addressed at a later stage, after an opportunity for at least limited discovery." *Jordan v. W. Distrib. Co.*, 286 F. Supp. 2d 545, 550 (D. Md. 2003), *aff'd*, 135 F. App'x 582 (4th Cir. 2005); *see also Downing v. Thompson*, No. 25-2225-EFM-BGS, 2025 WL 3652968, at *2 (D. Kan. Dec. 17, 2025) (finding that the plaintiff "narrowly succeeds in plausibly stating a common law negligence claim" against employer of truck driver based on allegation, among others, that employer "knew or reasonably should have known that its employees and agents, including but not limited to [the driver], created and were an undue risk of harm to Plaintiff" based on [alleged] cost cutting measures, resulting in Plaintiff's personal injuries").

## III. CONCLUSION

**ACCORDINGLY**, Defendants' Motion To Dismiss, **Doc. 8**, is **granted in part and denied in part**, and Plaintiff's motion for leave to amend the complaint, **Doc. 16**, is **granted in part**, and as follows:

1. Defendants' Motion To Dismiss is **GRANTED** as to Plaintiff's claims for negligent hiring and negligent supervision. Dismissal of those claims is without prejudice. To the

extent Plaintiff later discovers facts to support the claims for negligent hiring or supervision, she can seek leave to further amend the complaint accordingly. *See, e.g., Easterling v. Jones,* No. 1:20-CV-00182-GNS, 2021 WL 1723230, at *3 (W.D. Ky. Apr. 30, 2021).

2. Defendants' Motion To Dismiss is **DENIED** as to Plaintiff's claims in the proposed first amended complaint for negligent training and negligent entrustment.

3. Plaintiff is **DIRECTED** to file a Second Amended Complaint consistent with this opinion within **seven (7) days** of entry of this Memorandum Opinion and Order.

IT IS SO ORDERED this 29th day of September, 2026.

Kevin Sweazea

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE